IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **MOHAMMED FERAS MAJEED** *Plaintiff*, v. **META PLATFORMS, INC.**, *Defendant*. | Case No. 1:25-cv-968 Hon.: **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff MOHAMMED FERAS MAJEED, by and through his attorneys, CAIR Legal Defense Fund, brings this action against Defendant META PLATFORMS, INC. ("Meta"), a technology and communications conglomerate headquartered out of California and incorporated in Delaware, for injunctive relief, compensatory and punitive damages, pre-judgment and post-judgment interest, and costs and attorneys' fees for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq.*, for claims arising out of conduct that occurred at Meta's office in Austin, Texas. Meta discriminated against Plaintiff based on his religious identity as a Muslim by forcing him to choose between expressing his sincerely held religious belief and maintaining his employment. Meta silenced Plaintiff's expressions of religious solidarity with the Muslim community during the ongoing genocide in Gaza—a subject central to Plaintiff's faith—while permitting similarly situated non-Muslim employees to speak freely about other humanitarian and political crises.

1

## JURISDICTION

1. This Court has personal jurisdiction over Defendant Meta Platforms, Inc. because it maintains offices in Austin, Texas, and regularly conducts business within this judicial district.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because Defendant maintains a principal office in Austin, Texas, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

3. Plaintiff brings this action for religious discrimination in violation of Title VII of the Civil Rights Act of 1964, pursuant to 42 U.S.C. §2000e-5.

4. This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §1331 because they arise under federal law, including Title VII of the Civil Rights Act of 1964.

5. Plaintiff also seeks attorneys' fees and costs pursuant to 42 U.S.C. §2000e-2(m) and Federal Rule of Civil Procedure 54.

## PARTIES

6. Plaintiff MOHAMMED FERAS MAJEED is a devout Muslim domiciled in Texas.

7. At all relevant times, Plaintiff was an "employee" of Meta under all relevant statutes.

8. Defendant META PLATFORMS, INC. ("Meta") is a corporation incorporated in Delaware and headquartered in California. Meta maintains a physical office in Austin, Texas and conducts business throughout this District.

## ADMINISTRATIVE HISTORY

9. Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission on May 7, 2024. He received a Notice of Right to Sue

dated March 26, 2025. *Exhibit A.* This Complaint is timely filed within 90 days of receipt of that notice.

10. Accordingly, Plaintiff has exhausted his administrative remedies, as required by Title VII.

## FACTUAL ALLEGATIONS

11. Plaintiff, a devout Muslim of Indian national origin, was hired into a full-time role as a Financial Operations Supplier Master Analyst for Meta Platforms, Inc. in 2018.

12. Plaintiff holds a Bachelor of Business Administration in Supply Chain Management from The University of Texas at Austin and previously worked as a Logistics & Supply Chain Analyst for a freight contracting company associated with United Airlines and American Airlines for nearly four years.

13. During his tenure as a Supplier Master Analyst at Meta, Plaintiff was selected to spearhead projects, consistently exceeded productivity and quality goals, and received the S2P Move Fast award for his response to a high visibility security incident. Plaintiff's strong performance in this role earned him two promotions to Supplier Master Analyst, Modifications and, later, to Supplier Master Analyst, Quality Assurance.

14. After three years as a Supplier Master Analyst, Plaintiff was promoted to a leadership role as the Supplier Master Lead, On Boards Team in 2021. As Supplier Master Lead, Meta charged Plaintiff with managing a team of six to eight employees, hiring new team members, and coaching struggling team members to improve their productivity and performance.

15. Shortly after assuming a leadership role, Plaintiff displayed a Palestinian keffiyeh in his home office—a religious and cultural expression of solidarity with fellow Muslims suffering under occupation and genocide. This act, visible during work meetings, aligned with his religious obligations as a devout Muslim.

16. Plaintiff's religious obligation to speak out against injustice is also rooted in the Qur'an, which commands:

> O believers! Stand firm for justice as witnesses for Allah even if it is against yourselves, your parents, or close relatives. Be they rich or poor, Allah is best to ensure their interests. So do not let your desires cause you to deviate from justice. If you distort the testimony or refuse to give it, then know that Allah is certainly All-Aware of what you do." — Qur'an, Surah An-Nisa 4:135[1]

17. Plaintiff understood this command as requiring him to speak the truth in the face of injustice—especially against those oppressed because of their faith. His posts about the genocide in Gaza were acts of religious witness consistent with this obligation.

18. Plaintiff's convictions are also grounded in the Hadith of the Prophet Muhammad (ﷺ), who said:

> Whosoever of you sees an evil, let him change it with his hand; and if he is not able to do so, then [let him change it] with his tongue; and if he is not able to do so, then with his heart — and that is the weakest of faith." [Muslim].[2]

---

[1] *See* Al-Qurʾān 4:135, https://quran.com/an-nisa/135 (last visited June 23, 2025).

[2] *See* Imām Nawawī, Al-Arbaʿīn an-Nawawiyya No. 34, Sunnah.com, https://sunnah.com/nawawi40:34 (last visited June 23, 2025).

4

19. Plaintiff's posts, prayers, and visible displays of support for Palestinians were expressions of his faith—motivated by the imperative to speak against what he, as a Muslim, believes is a grave injustice.

20. These religious imperatives are rooted in the Islamic concept of "ummah"—the global Muslim community—which obligates Muslims to advocate for one another, particularly in the face of persecution. Support for Palestinian Muslims facing genocide is not optional; it is a duty bound in faith.

21. Muslims frequently demonstrate their commitment to the ummah by advocating for oppressed and impoverished Muslims across the world. The oppression of Palestinian Muslims is of particular concern to the ummah, as Palestinian Muslims have been systematically oppressed and subjugated by the apartheid government of Israel since 1948. Rights groups estimate that 99% of Palestinians identify as Muslim.[3]

22. As a Muslim, Plaintiff's support for Palestinian Muslims is spurred by deeply held moral, ethical, and religious beliefs, and Plaintiff would have no rest or peace if he did not speak out in support of Palestinian Muslims.

23. In November of 2022, amid mass layoffs at Meta, Plaintiff's team of six to eight employees was released from their employment with Meta. Plaintiff was retained by the Supplier Master Team from November 2023 until July or August 2024, at which point the company underwent another round of layoffs, during which Plaintiff was reassigned into a lateral, non-managerial role as a Global P2P Governance Analyst.

---

[3] *Palestine*, MINORITY RIGHTS GROUP (23 April 2025, 9:23 am) https://minorityrights.org/country/palestine/.

24. During Plaintiff's first five years with Meta, Plaintiff's supervisors characterized Plaintiff's performance as "Meet[ing] All Expectations," "Exceed[ing] Expectations," "Greatly Exceed[ing] Expectations," or "Consistently Meet[ing] All Expectations."

25. Over his first five years, Plaintiff's supervisors never indicated Plaintiff "Did not Meet" or only "Met Some" of his professional expectations during Plaintiff's performance reviews.

26. In November of 2023, Plaintiff engaged with another Muslim co-worker in a Meta forum for Palestinian employees (called Palestinian @ Meta) on the Meta Workplace internal platform. During their exchange, Plaintiff's Muslim co-worker shared they lost a family member to Israeli violence in Gaza. Plaintiff responded in faith, saying, "[m]ay Allah be with you" before offering prayers of support.

27. Later, in December of 2023, Plaintiff joined his colleagues in a chorus of religious sentiment ahead of the Christian holiday by imploring those around him to keep the Christians of Gaza in their prayers because they had to cancel Christmas celebrations as a result of increased tensions in Gaza.

28. As Israeli violence against Palestinians continued to escalate, Plaintiff utilized his sick leave from Meta to take a mental health day. While he was away from the Meta office, Plaintiff posted an "out of office" status on Workplace, informing his colleagues that he was taking time to focus on his faith for strength and resilience as Gazans suffered unspeakable devastation in full view across Meta's various social media platforms.

29. Following Plaintiff's solicitation for prayer, on December 26, 2023, a member of the Meta Internal Community Relations ("ICR") team summoned Plaintiff for a formal meeting via video conference.

30. During the December 26 meeting, Meta formally reprimanded Plaintiff and instructed him to conceal his Palestinian keffiyeh from future video calls, citing its symbolism. This directive singled out Plaintiff's religious and political expression in a way not applied to others.

31. While Meta classified the Palestinian struggle as a "sovereignty issue" and censored Plaintiff's religious expressions accordingly, it did not discipline non-Muslims for similarly expressive speech about the Black Lives Matter movement, Israel, or Ukraine. This selective enforcement created a double standard that disproportionately silenced Muslim voices.

32. During this meeting, the ICR team also, for the first time, stated that "to comply with section 1.4 of the CEE, [Plaintiff] should ensure that the Palestinian flag, which was visible in the background of [Plaintiff's] work area during the call, [would] not [be] visible during future work video conferences."

33. Pursuant to Section 6.6 of the Meta CEE, which details consequences for violating the Community Engagement Expectations, Plaintiff's violation of the "Disruptive Topics" policy could result in a number of adverse employment actions, depending:

> on the severity of the violation and other context such as a person's prior conduct. Examples of consequences include: [c]ontent removal; [t]urning off or slowing down comments; [g]roup archival; [c]oaching; [r]eferring the matter to a manager in your reporting line; [r]eferring the matter to the Employee Relations Business Partner or Contingent Worker Business Partner team for follow-up; [d]isciplinary action up to and including termination of employment for Meta employees or removal from Meta's account for contingent workers, subject to

applicable law; or [o]ther actions may be appropriate under the circumstances and applicable law.

34. Upon witnessing the increasingly hostile environment at Meta, Plaintiff submitted a Complaint to Maxine Williams, the Global Chief Diversity Officer at Meta. In his Complaint, Plaintiff expressed his disappointment regarding Meta's censorship of minority voices and implored Meta to adhere to and expand its "Be Your Authentic Self" initiative.

35. The Global Chief Diversity officer acknowledged Plaintiff's concerns and represented Meta was working to "support and serve" Plaintiff.

36. On January 25, 2024, Plaintiff took to Workplace to express concern about the International Criminal Court's anticipated findings on whether Israel's actions constituted genocide or crimes against humanity. Shortly after posting, a member of the ICR team contacted Plaintiff to inform him of their investigation into his statements.

37. A week later, Plaintiff edited his Workplace profile to include a photo of the Dome of the Rock alongside a cyclist dressed in the colors of the Palestinian flag.

38. On February 9, 2024, Plaintiff posted a screenshot of his Muslim colleague's post that had previously been removed and captioned the post, "Metamate comment on this thread removed." Plaintiff continued, writing, "Meta is quick to block and delete, but then leave me and others in the dark on reasoning, support, and most importantly, allyship on such a significant and ongoing movement as the Palestinian occupation." Finally, Plaintiff concluded his post with, "It is my assumption that Meta is taking the stance of silence regarding the ongoing genocide in Gaza." This statement reflected

8

Plaintiff's religious and moral obligation to bear witness to atrocities committed against fellow Muslims and was immediately subject to internal investigation

39. On February 29, 2024, Plaintiff posted on Workplace, "[t]here've been devastating impacts caused by AI-generated images in the ongoing destruction of Palestinian lives in Gaza."

40. Plaintiff's comments reflected broader discourse in the tech community about the ethical implications of AI-generated content in armed conflicts—an issue widely visible across Meta's platforms and directly related to Meta's global operations.[4]

41. On March 4, 2024, Meta issued Plaintiff a verbal warning for posting disruptive topics in violation of Sections 1.4 and 6.6 of the CEE on multiple occasions since October 2023.

42. By contrast, Plaintiff's non-Muslim colleagues were permitted to express support and sympathy for Jewish victims and other global crises without censorship, including posts condemning antisemitism, expressing support for Israeli hostages, and sharing personal stories related to the October 7 attacks. This disparity highlights Meta's selective and discriminatory enforcement of its policies against Plaintiff and other Muslim employees.

43. On May 7, 2024, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") against Meta, alleging Meta discriminated against him based on his race, color, national origin, and religion under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Texas Commission of Human Rights ("TCHRA").

---

[4] *'All eyes on Rafah': how AI-generated image swept across social media.* THE GUARDIAN (23 April 2025, 9:40 am) https://www.theguardian.com/world/article/2024/may/30/all-eyes-on-rafah-how-ai-generated-image-spread-across-social-media.

9

## CLAIMS FOR RELIEF

## COUNT I

**Disparate Treatment on the Basis of Religion in Violation of Title VII of the Civil Rights Act of 1964 and the Texas Labor Code**

44. For the purposes of the Civil Rights Act of 1964, Meta is a covered entity, as Meta employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the calendar year in which the discrimination occurred.

45. Plaintiff pleads a prima facie case of religious discrimination under Title VII: (1) he is a Muslim; (2) he was qualified for his position; (3) he suffered adverse actions, including formal reprimands and targeted restrictions on speech; and (4) similarly situated non-Muslim employees were treated more favorably under the same policies.

46. The acts described in the preceding paragraphs violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and Chapter 21 of the Texas Labor Code, which make it unlawful for an employer to discriminate against any individual, with respect to terms or conditions of employment, because of an individual's religion. This encompasses disparate treatment discrimination.

47. Plaintiff suffered adverse employment actions, including formal reprimands, content removal, verbal warnings, and threats of further discipline, all stemming from his religiously motivated expression. By comparison, Plaintiff's colleagues have been treated more favorably as his colleagues' opposing viewpoints and posts regarding similarly "disruptive topics" remain publicly available on Workplace while Plaintiff's posts seeking prayers for Palestine have been hidden and removed.

48. By discriminating against Plaintiff in the terms and conditions of his employment—based on his religious identity and his protected religious expression—Meta violated Title VII of the Civil Rights Act of 1964 and Chapter 21 of the Texas Labor Code.

49. As a direct and proximate result of Meta's actions, Plaintiff has sustained economic damages in the form of back pay and benefits, front pay and benefits, and non-economic damages, including emotional distress.

50. Meta is further liable for punitive damages for engaging in intentional discrimination and has done so with reckless indifference to Plaintiff's federally protected rights.

51. Plaintiff is also entitled to attorney fees, expert witness fees, and costs.

## COUNT II

**Disparate Impact Discrimination in Violation of Title VII of the Civil Rights Act of 1964 and the Texas Labor Code**

52. Title VII of the Civil Rights Act of 1964 and Chapter 21 of the Texas Labor Code also provide that disparate-impact discrimination is unlawful.

53. Plaintiff was formally reprimanded for violating sections 1.4 and 6.6 of Meta's Community Engagement Expectations. Section 1.4 concerns disruptive topics and provides that discussions regarding health matters, legal matters, and political matters will be limited. Section 6.6 provides consequences for violating the policy, including content removal and disciplinary actions.

54. Meta's Community Engagement Expectations, including Sections 1.4 and 6.6, are facially neutral policies prohibiting discussion of "disruptive topics" such as sovereignty issues, statehood disputes, and armed conflicts. In practice, however, Meta applied these policies in a manner that disproportionately censored Muslim

employees—removing or punishing religiously motivated expressions about the genocide in Gaza—while permitting non-Muslim employees to speak freely about Ukraine, Israel, and other political or humanitarian issues. This selective enforcement created a disparate impact on Muslim employees and chilled protected religious expression.

55. Meta's policies, as applied, disproportionately and adversely affect protected classes expressing diverse perspectives. Plaintiff, a member of a protected class as a Muslim man, was disproportionately affected by Meta's policies when his comments regarding Palestine were removed while his non-Muslim colleagues' opposing views and views on similarly "disruptive" topics remained visible.

56. As Plaintiff's colleagues were permitted to express their sympathies with Jewish victims and innocents after October 7th, 2023, a neutral application of Meta's policy would allow Plaintiff to express his sympathies with Muslim victims of Israeli violence.

57. However, as Meta removed Plaintiff's comments from view, Meta selectively applied their policies to promote the perspectives of certain non-Muslim groups regarding "disruptive topics" while censoring the perspective of Plaintiff and his Muslim colleagues.

58. As Plaintiff was censored for sharing his perspective regarding the Israeli violence in Gaza, Plaintiff was effectively singled out because of his identity and perspective as a Muslim man.

59. As a direct and proximate result of Meta's actions, Plaintiff has sustained economic damages in the form of back pay and benefits, front pay and benefits, and non-economic damages, including emotional distress.

60. Meta is further liable for punitive damages for engaging in intentional discrimination and has done so with reckless indifference to Plaintiff's federally protected rights.

61. Plaintiff is also entitled to attorney fees, expert witness fees, and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MOHAMMED FERAS MAJEED respectfully requests this Court enter judgment in his favor and against Defendant META PLATFORMS, INC. and award the following relief:

1. Declaratory relief that Meta violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964;
2. An injunction:
    a. prohibiting further religious discrimination by Meta;
    b. removing any reference to "poor performance" from Plaintiff's personnel record;
    c. requiring Meta to provide annual religious sensitivity training for its management;
3. Back pay and lost benefits;
4. Front pay or reinstatement, as appropriate;
5. Non-economic damages for emotional distress and reputational harm;
6. Punitive damages for Meta's willful and reckless violations;
7. Prejudgment interest and post-judgment interest;

8.  Attorneys' fees and litigation costs; and,

9.  Any other relief the Court deems just and proper in the interests of justice.

## JURY DEMAND

Plaintiff demands a trial by jury of the above-referenced causes of action.

Respectfully Submitted,

**CAIR LEGAL DEFENSE FUND**

/s/ Lena Masri
Lena Masri (DC 1000019)
lmasri@cair.com
Gadeir Abbas (VA 81161)*
gabbas@cair.com
Nadia Bayado (DC 90023648)
nbayado@cair.com

453 New Jersey Ave SE
Washington, DC 20003
Email: ldf@cair.com
Tele: 202-742-6420
Fax: 202-379-3317

*Licensed in VA; not in D.C.,*
*Practice limited to federal matters*